# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

VICTORIA LYN McCLANAHAN,       )
                               )
        **Plaintiff,**     )
                               )
v.                             )   Case No. CIV-07-420-SPS
                               )
MICHAEL J. ASTRUE,             )
Commissioner of the Social     )
Security Administration,       )
                               )
        **Defendant.**     )

## OPINION AND ORDER

The claimant Victoria McClanahan requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence or substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 2, 1975, and was thirty-one years old at the time of the administrative hearing. She has a high school education and previously worked as a receptionist, secretary, assembler, and office clerk. She alleges she has been unable to work since June 30, 2004, because of degenerative disc disease of the cervical spine, major depressive disorder, anxiety disorder, and personality disorder.

## Procedural History

On August 31, 2004, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Michael Kirkpatrick conducted a hearing and found that the claimant was not disabled on February 20, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work, *i. e.*, lifting and/or carrying up twenty pounds occasionally and ten pounds frequently; standing and/or walking for at least six hours in an eight-hour workday; and sitting for six hours in an

eight-hour workday (Tr. 21). The claimant could "understand, remember, and carry out simple, routine, unskilled tasks (but not detailed, semi-skilled tasks, and not complex, skilled tasks[),]" and "[s]he require[d] a task-oriented job which d[id] not require interaction with the general public." (Tr. 19). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, housekeeping cleaner, hand bander, and food production work (bakery racker) (Tr. 26).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical opinion of her treating physician, Dr. Michael J. Irvin, D.O.; and, (ii) by finding she had the RFC to perform substantial gainful activity. The Court finds that neither of these contentions has merit.

The claimant first argues that the ALJ failed to properly consider the medical opinion of Dr. Irvin that she was unable to work. Specifically, the claimant contends that the ALJ's conclusion that Dr. Irvin's opinion "[was] inconsistent with the preponderance of the credible evidence of record, including other opinion evidence" was unsupported because the ALJ failed to mention on what evidence he was relying. The record reveals that the claimant received treatment from Dr. Irvin for both her physical and mental impairments from March 2005 through October 2006 (Tr. 195-212), and he also referred her for an MRI of the right shoulder and cervical spine and for a sleep study (Tr. 184-86, 188-92). With regard to her mental impairments, Dr. Irvin noted the the claimant was taking Prozac in April 2005 (Tr.

-4-

203-04). At some point during his treatment of the claimant, Dr. Irvin indicated in an undated note written on a prescription pad that the claimant was "unable to work at this time" because of her panic attacks (Tr. 154).

The ALJ discussed Dr. Irvin's finding that the claimant was unable to work and determined: (i) the finding was not entitled to controlling weight or any special significance because it was "not well supported by medically acceptable clinical and laboratory diagnostic techniques" and was "not consistent with other substantial medical and non-medical evidence of record[,]" *see, e. g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (finding that medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); and, (ii) the finding amounted to a disability determination, which is reserved exclusively to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), (2), 416.927(e)(1), (2) (noting that opinions that claimant is disabled (or "unable to work") or that an impairment meets or equals the requirements of any impairment in the Listing of Impairments "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."). The ALJ then applied the factors set forth in 20 C.F.R §§ 404.1527, 416.927, *see, e. g., Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical

opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527 [and § 416.927].'"), *quoting Watkins*, 350 F.3d at 1300,[2] and determined: (i) that Dr. Irvin was not a mental health specialist but was a general family physician; (ii) that Dr. Irvin never referred the claimant "for mental health treatment by a specialist such as a psychiatrist or psychologist;" and, (iii) that he saw the claimant infrequently and the treatment he provided was "primarily for routine and minor and self-limiting physical complaints" and was "very conservative, basically just consisting of the prescribing of some modest dosages of some medications." (Tr. 23-24). The ALJ concluded he was "unable to give evidentiary weight to Dr. Irwin's [*sic*] general conclusion of disability, because it [was] inconsistent with the preponderance of the credible evidence of record, including other opinion evidence[.]" (Tr. 24).

The Court finds no error in the ALJ's evaluation of Dr. Irvin's opinion. The ALJ did not specifically point out the inconsistencies between Dr. Irvin's opinion and the other evidence in the record,[3] but he was not required to conduct a treating physician analysis of

---

[2] The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

[3] The ALJ did summarize the claimant's treatment records from Family Counseling, the Family Health Center, and Carl Albert Community Mental Health Center (Tr. 18, 21, 22), the psychological examination by consulting psychologist Dr. Randy Crittenden, Ph.D. (Tr. 18-19), and the Psychiatric Review Technique Form and mental RFC assessment completed by state agency psychologists (Tr. 19), and none of this evidence included opinions that the claimant was unable to work.

Dr. Irvin's determination that the claimant was unable to work. *See, e. g., Balthrop v. Barnhart*, 116 Fed. Appx. 929, 932 (10th Cir. 2004) (finding that an opinion couched as conclusive on an issue reserved to the Commissioner is not a medical opinion entitled to controlling weight analysis or any special significance) [unpublished opinion], *citing* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ's discussion of Dr. Irvin's opinion otherwise meets the requirements of the governing regulations. *See, e.g.*, *Ramirez v. Astrue*, 255 Fed. Appx. 327, 333 (10th Cir. 2007) ("Although the issue of whether Mr. Ramirez was able to work is an issue reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1), the controlling rules nonetheless 'provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2; *see also id.* at *5 (stating that "[medical source] opinions on [issues reserved to the Commissioner] must not be disregarded.").

The claimant also contends that the ALJ erred in determining that she could perform substantial gainful activity, *i. e.*, work performed on a regular and continuous basis. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that substantial gainful activity involves "work activity on a regular and continuing basis, that is, 8 hours a day, for 5 days a week, or an equivalent work schedule[.]") [internal quotation marks and citations omitted]. She argues that the evidence shows she suffers from depression and a lack of concentration and pace that would prevent her from completing a normal workday, and that the ALJ therefore erred by failing to include limitations consistent with this evidence in her RFC and

in hypothetical questions posed to the vocational expert ("VE"). However, the ALJ discussed the evidence regarding the claimant's mental impairments, *e. g.*, Dr. Irvin's determination that the claimant was unable to work (Tr. 21, 22-24), a psychological examination by consulting physician Dr. Randy Crittenden, Ph.D. (Tr. 18-19), treatment from the Family Health Center (Tr. 21), counseling the claimant received from the Carl Albert Community Mental Health Center (Tr. 18, 22), and a Psychiatric Review Technique Form and mental RFC assessment completed by state agency psychologists (Tr. 19), and determined that she had the mental RFC to "understand, remember, and carry out simple, routine, unskilled tasks (but not detailed, semi-skilled tasks, and not complex, skilled tasks[),]" and "[s]he require[d] a task-oriented job which d[id] not require interaction with the general public." (Tr. 19). Further, he assessed the claimant's credibility and found that her allegations of functional impairment were not entirely credible (Tr. 20-25), an assessment the claimant does not challenge. The ALJ posed hypothetical questions to the VE that included the functional limitations he found appropriate and was under no obligation to adopt hypothetical questions including functional restrictions that he did not find appropriate or did not include in the claimant's RFC. *See, e. g.*, *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (noting that an ALJ is not bound by the VE's responses to a hypothetical, if it contained impairments the ALJ did not accept as true). *See also Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (noting that an ALJ's hypothetical questioning of a VE will provide an appropriate basis for a denial of benefits where the questions "included all the limitations the ALJ ultimately included in his RFC assessment."), *citing Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). The Court therefore finds no error on the ALJ's part.

**Conclusion**

As set forth above, the Court finds that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

**DATED** this 15th day of January, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**